UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 11-60403-CIV-O'SULLIVAN
[CONSENT]

CLIFTON M. MITCHELL,

    Plaintiff,

v.

INTERNATIONAL CONSOLIDATED
COMPANIES, INC.,
ANTONIO F. UCCELLO, III,
RONALD CIARAVELLA,
TRC ACQUISITION CORP., and
JASON FINE,

    Defendants.
_____/

## ORDER

THIS MATTER is before the Court on the Defendants' Re-Submitted Motion for Sanctions Pursuant to Fed. R. Civ. P. 11, 28 USC § 1927, and/or the Court's Inherent Power (DE# 124, 5/23/12) and Fox Rothschild's Motion for Leave to File Sur-Reply (DE# 143, 8/1/12).  Having reviewed the re-submitted motion, response (DE# 7/20/12), reply (DE# 138, 7/30/12), and the respective declarations and exhibits thereto, and being duly advised in the premises, it is

ORDERED AND ADJUDGED that the Defendants' Re-Submitted Motion for Sanctions Pursuant to Fed. R. Civ. P. 11, 28 USC § 1927, and/or the Court's Inherent Power (DE# 124, 5/23/12) is DENIED for the reasons set forth below.  It is further

ORDERED AND ADJUDGED that Fox Rothschild's Motion for Leave to File Sur-Reply (DE# 143, 8/1/12) is DENIED.

## INTRODUCTION

The defendants' initial motion for sanctions was filed on June 7, 2011.  The Court held a hearing on June 27, 2011 and a status conference on June 30, 2011.  On

July 1, 2011, the Court issued an Order Staying the Case until September 30, 2011, denied as moot all pending motions, and set the matter for a status conference on October 12, 2011.  The case remained stayed except as to the conflict issue that defendants raised regarding Fox Rothschild's representation of Mitchell in this action and Mr. Discount in the Pennsylvania action.  On October 24, 2011, which was before the deadline for the defendants to file their motion to disqualify, the Court granted Fox Rothschild's motion to withdraw.  New counsel appeared on the plaintiff's behalf that same day.  On December 9, 2011, the defendants filed their Motion to Lift the Stay of Litigation.  On March 29, 2012, the plaintiff filed his Notice of Voluntary Dismissal. On May 10, 2012, the Court granted in part the Motion to Lift Stay; granted in part the Motion to Deem the sanctions motion re-filed; and granted Mitchell's subsequent counsel's motion to withdraw.  (DE# 120).

The defendants seek sanctions against the plaintiff's former law firm Fox Rothschild[1] under Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the Court's inherent power.  The defendants contend that the plaintiff's action "was a premeditated fraud on the Court, engineered and perpetrated by [Fox Rothschild].Fox Rothschild never had any legal or factual basis to assert their claims and relied on smoke and mirrors to extort a settlement."  Re-Submitted Motion for Sanctions at 1-2 (DE# 124, 5/23/12).  The crux of the defendants' sanctions motion is that Fox Rothschild allegedly advanced two inconsistent positions regarding ownership claims to

---

[1] The initial motion for sanctions was directed at both the plaintiff, Clifton M. Mitchell, and the plaintiff's law firm, Fox Rothschild.  The re-submitted motion for sanctions, which relies on the plaintiff's declaration for support, seeks sanctions against Fox Rothschild as the "primary and most culpable malefactor."  Re-Submitted Motion at 2 n.4 (DE# 124, 5/23/12).  The defendants maintain that they "do not waive [their] claim" for sanctions against Mr. Mitchell.

2

the 1-2-1 Direct call center in two lawsuits against the defendants on behalf of two clients whose interests' conflicted.[2]

The defendants appear to rely on all three sub-sections of Rule 11 to obtain sanctions against Fox Rothschild.  In support of their re-submitted motion for sanctions, the defendants submit the Declaration of Clifton M. Mitchell (DE# 124-1, 5/23/12); the hearing transcript (DE# 124-2, 5/23/12); the Answer of Defendant, Stuart Discount, with New Matter and Counterclaim to Plaintiffs' Amended Complaint (DE# 124-3, 5/23/12); the Second Amended Joinder Complaint against Jason Fine in the Pennsylvania action (DE# 124-4, 5/23/12); Excerpt of the transcript of the Deposition of Stuart M. Discount 2/21/12 (DE# 124-5, 5/23/12); Affidavit of Stuart Discount filed in opposition to the motion to disqualify Fox Rothschild in the Pennsylvania action (DE# 124-6, 5/23/12); and the Declaration of Antonio F. Uccello, III in Opposition to Plaintiffs' Emergency Ex-Parte Motion for Temporary Injunction in the Florida state court action (DE# 124-7, 5/23/12).

In support of its response in opposition (DE# 138; 7/20/12), Fox Rothschild submits the Declaration of Brett Berman and exhibits.  (DE# 139, 139-1 through 139-26; 7/20/12).   The defendants filed a reply (DE# 142; 7/30/12) that attaches a Reply Declaration of Clifton Mitchell in Response to Declaration of Brett Berman (DE# 142-1, 7/30/12) and other exhibits.

## BACKGROUND

---

[2]The Pennsylvania court denied the defendants' motion to disqualify Fox Rothschild. See Exhibit I, March 12, 2012 Order (DE# 139-9, 7/20/12).  This Court granted Fox Rothschild's motion to withdraw as counsel for Clifton M. Mitchell before the defendants filed a motion to disqualify in this action but after the defendants raised the conflict issue. (DE# 101, 10/24/11).

3

This action arises from a dispute concerning the right to acquire a call center known as 1-2-1 Direct located in Pennsylvania.  TRC and Jason Fine ("Fine"), who is TRC's sole shareholder, asserted that in May 2010, TRC acquired the call center from International Consolidated Companies, Inc. ("ICCI")  by closing on a Stock Purchase Agreement "("SPA"), dated May 12, 2010.  The SPA provides for the sale to TRC of all of ICCI's shares in Tele Response Center, Inc. and Tele Star, Inc. d/b/a "1-2-1 Direct."

Mitchell was a large shareholder in North America Life ("NAL"), which was a shareholder of ICCI.  Mitchell feared that ICCI might sell or pledge 1-2-1 Direct without proper shareholder approval.  In early 2010, Mitchell, through NAL, sued defendant Ucello in Texas state court ("Texas Action") and on March 9, 2010 obtained a temporary restraining order ("TRO") barring Uccello from entering into any agreements to sell the assets of ICCI without first obtaining ICCI shareholder approval.  On April 8, 2010, the Texas court issued an injunction against Ucello barring him, among other things, from "[i]mpairing the value of the Pledged Collateral or making fraudulent transfers by directly or indirectly causing ICCI to dispose of the 1-2-1 Direct subsidiaries or any other significant assets of ICCI without first obtaining approval from the shareholders at a duly-called shareholders' meeting...." (DE# 139-7, 7/20/14).  In a letter dated June 5, 2010 (the "Graves Letter"), the defendants were advised of the Texas TRO, which prohibited the sale of and even the entering into of any agreement to sell 1-2-1 Direct without ICCI shareholder approval. The defendants continued their efforts to acquire 1-2-1 Direct into January 2011 when TRC and ICCI filed a Settlement Agreement waiving the closing conditions of the May 2010 SPA.  Fox Rothschild alleged "on information and belief" that the defendants knew of the Texas TRO before the June 5, 2010 Graves Letter was sent.  Fox Rothschild maintains that the

4

defendants had notice of the Texas TRO before the SPA closing occurred.

Fox Rothschild argues further that the sale of 1-2-1 Direct did not occur in May 2010 based on the Access Capital Agreement. Access Capital was purchasing 1-2-1 Direct's receivables. ICCI and TRC, through Uccello and Fine as signatories, and Access Capital executed a tri-party letter agreement (the "Access Capital Agreement") affirming that the sale had not closed, requiring consent of Access Capital to any sale, and requiring the parties to allow Access Capital the opportunity to review proposed closing documents. Amended Complaint ¶¶ 98-100; Berman Decl. ¶ 31 & Ex. K. Fox Rothschild argues that the Access Capital Agreement reveals that ICCI and TRC, and their representatives, acknowledged that the transaction had not closed.

Mitchell had filed a shareholder derivative action against the officers and directors of ICCI in Sarasota County, Florida. In the shareholder derivative action, in the Settlement Agreement and Release dated October 14, 2010, which was executed by both Uccello and Mitchell, Uccello represents that the SPA closing did not take place and that ICCI was rescinding its SPA with TRC. Berman Decl. ¶ 30. This was five months after the purported ICCI-TRC closing. On December 9, 2010, Jonathan Leinwand, outside counsel for ICCI, sent a formal written notice of termination to TRC and Fine advising them that TRC had failed to fulfill the terms and conditions of the SPA (the "Leinwand Letter"). The Leinwand Letter states that TRC interfered with 1-2-1 Direct and caused irreparable harm to the company. It also demands that TRC return any property of 1-2-1 in its possession. Amended Complaint ¶ 113; Berman Decl. ¶ 32 & Ex. L.

In December 2010, TRC, knowing that a dispute existed concerning its claimed ownership of 1-2-1 Direct, filed suit against ICCI, Uccello and others in Miami-Dade

County Circuit Court seeking to determine its ownership rights. Amended Complaint ¶ 109-110; Berman Decl. ¶ 38.  On January 18, 2011, TRC, ICCI and Uccello filed a Joint Motion for Approval of Settlement Agreement and Dismissal of Claims Without Prejudice.  The Joint Motion attached the Settlement Agreement as an exhibit.  The parties asked the Florida state court to approve the Settlement Agreement and enter an order of dismissal without prejudice.  The Miami-Dade County state court entered a routine settlement order titled "Final Order Approving Settlement Agreement and Dismissal Without Prejudice" on January 19, 2011. Berman Decl. ¶ ¶ 40-42 & Exs. P & Q.  The Florida state court did not actually adjudicate any issues.  Although Mitchell was named a defendant, he was never served with a summons and complaint. Berman Decl. ¶ ¶ 42-43.  He was never a party to the Settlement Agreement.  Eight months after the purported closing, the parties found it necessary to waive pre-closing conditions.

     Mitchell never advised Fox Rothschild that he accepted TRC's ownership of 1-2-1 Direct.  He retained Fox Rothschild for the purpose of either enforcing his right to acquire the business or, if that was not possible, seeking damages from the parties responsible for interfering with his rights.  Berman Decl. ¶ 27.  Mitchell never advised Fox Rothschild that he was satisfied with Fine's management of the call center.  He advised Fox Rothschild that he was gravely concerned that Fine's mismanagement of the business would destroy its value.  Mitchell wanted Fox Rothschild to pursue the immediate appointment of a receiver and injunctive relief.  Berman Decl. ¶ 27.  The Lienwand Letter confirmed TRC's mismanagement. Berman Decl. ¶ 33.  Stuart Discount (hereinafter "Discount"), a client of Fox Rothschild in the Philadelphia litigation involving the call center, also confirmed TRC's mismanagement of the call center.

Berman Decl. Ex. O (¶¶ 15-16).  Fox Rothschild asked Mitchell to review every substantive filing in the case.  Mitchell either approved the filings or did not respond with any comments or objections.  He never objected to any of the factual assertions that Fox Rothschild made on his behalf in the filed documents.  Berman Decl. ¶ 51.  Mitchell repeatedly advised Fox Rothschild that he was the only party with the right to acquire the call center.  Berman Decl. ¶¶ 52 -53 & Ex. V and W.  Mitchell reviewed and agreed with Fox Rothschild's response letter to the defendants' Rule 11 notice.  Berman Decl. ¶ 55 & Ex. Y.

In the present action, Mitchell asserted in his Complaint and Amended Complaint that TRC did not close on this transaction in May 2010 and that, in October 2010, when Mitchell obtained the right to engage in a similar transaction with ICCI, the pre-conditions that had to be met by TRC to close the SPA had failed, and ICCI did not intend to sell 1-2-1 Direct to TRC.  On October 14, 2010, Mitchell and defendant Anthony Uccello (CEO and Chairman of ICCI) entered into a Settlement Agreement and Release granting Mitchell the right to acquire 1-2-1 Direct.  The Settlement Agreement resolved a shareholder derivative action filed by Mitchell in Sarasota County, Florida against Uccello and other members of ICCI's management.  Fox Rothschild did not represent Mitchell in the Sarasota action.

In the present action, Mitchell alleged that TRC and Fine interfered unlawfully with Mitchell's right to acquire ownership of 1-2-1 Direct.  The original Complaint included five claims against TRC and Fine.  In Count III, Mitchell alleged that Fine and TRC had engaged in a conspiracy with Uccello to sell 1-2-1 Direct to TRC despite having clear knowledge that a Texas court had issued an injunction preventing Uccello from entering into any agreement to sell ICCI's assets without shareholder approval.  In

Count V, Mitchell alleged that ICCI, Uccello, Fine and TRC, through the same conduct, unlawfully deprived Mitchell of his right to pursue 1-2-1 Direct.  In Count VII, Mitchell alleged an intentional interference with prospective business relationship by TRC and Fine, based on their conduct in unlawfully preventing ICCI and Uccello from selling 1-2-1 Direct to Mitchell.  In Count VIII, Mitchell sought an accounting by ICCI concerning the call center business and joined TRC and Fine to the extent that they had *de facto* control over 1-2-1 Direct.  In Count IX, Mitchell sought an injunction to prevent TRC and Fine from wrongfully retaining any assets of the call center business that they had unlawfully obtained and sought the appointment of a receiver to prevent mismanagement and waste in the conduct of the business of 1-2-1 Direct.

  Mitchell's Amended Complaint added new and more detailed factual allegations in support of his five claims and asserted one additional claim.  In Count X, Mitchell alleged that Fine defamed him and engaged in a smear campaign against Mitchell by making false and slanderous statements about Mitchell to third parties, including insurance regulators, intended to destroy Mitchell's reputation and to pressure Mitchell into dismissing this action.

  TRC and Fine sought dismissal of the Amended Complaint on various grounds.  Due to the stay of the litigation, the mediation and the settlement, the Court never ruled on the sufficiency of the Amended Complaint.  After defendants disclosed their intent to move to disqualify Fox Rothschild in the present action, but before any motion was filed, Mitchell voluntarily dismissed the Amended Complaint in this action while he was represented by new counsel.

## ANALYSIS

Rule 11 Sanctions Not Warranted

The purpose of Rule 11 sanctions is to reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers. Massengale v. Ray, 267 F.3d 1298, 1302 (11th Cir. 2001); Baker v. Alderman, 158 F.3d 516, 524 (11th Cir. 1998); United States v. Milam, 855 F.2d 739, 742 (11th Cir. 1998); Thomas v. Evans, 880 F.2d 1235, 1239 (11th Cir. 1989).

Rule 11(b) states as follows:

(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).  "[A] federal district court is required to evaluate whether the motion, pleading or other paper reflected what could reasonably have been believed by the signer at the time of signing." Aetna Ins. Co. v. Meeker, 953 F.2d 1328, 1331 (11th Cir. 1993).  Under Rule 11, the objective standard for assessing a party's conduct is

9

"reasonableness under the circumstances" and "what was reasonable to believe at the time the pleading was submitted." Baker v. Alderman, 158 F.3d at 524. "[Rule 11] sanctions are reserved as *punishment* for those litigants who blatantly abuse the Court's resources – they will not be imposed lightly against every failing litigant." Gelles v. Skrotsky, 15 F. Supp. 2d 1293, 1297 (M.D. Fla. 1998)(denying motion for sanctions regarding dismissed action). Rule 11 sanctions are not appropriate merely because factual disputes regarding allegations in a pleading exist. See Cabrera v. The Goodyear Tire & Rubber Co., 2011 WL 535103 at *2 (S.D. Fla., Feb. 8, 2011) (finding the parties conflicting accounts of what happened demonstrated factual disputes that did not justify Rule 11 sanctions); see also Hillsborough County v. A & E Road Oiling Service, Inc., 160 F.R.D. 655, 658-659 (M.D. Fla. 1995) (finding a factual dispute does not warrant Rule 11 sanctions).

The Eleventh Circuit has determined that three types of conduct warrant Rule 11 sanctions: when a party files a pleading with no "reasonable factual basis" (Rule 11(b)(3)), files a paper based on a legal theory with "no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law" (Rule 11(b)(2), or files a paper in "bad faith for an improper purpose" (Rule 11(b)(1)). Didie v. Howes, 988 F.2d 1097, 1104 (11th Cir. 1993)(quoting Pelletier v. Zweifel, 921 F.2d 1465, 1514 (11th Cir.), cert. denied, 502 U.S. 855 (1991)). "Sanctions may be imposed on the attorney, law firm, or party if Rule 11 is violated, the offending party is provided with an opportunity to withdraw the objectionable pleading and fails to do so, and a motion for sanctions is filed with the court." Lee v. Mid-State Land & Timber Co., Inc., 285 Fed. App'x 601, 608 (11th Cir. 2008) (citing Fed. R. Civ. P. 11(c)). "A court confronted with a motion for Rule 11 sanctions must first determine whether the claims

raised are objectively frivolous and, if they are, whether the signer of the pleadings should have been aware of their frivolous nature." Id. (citing Worldwide Primates, Inc. v. McGreal, 87 F. 3d 1252, 1254 (11th Cir. 1996)).

Plaintiff's Claims Are Not Objectively Frivolous

The undersigned finds that the claims raised by the plaintiff in the Complaint and the Amended Complaint were not objectively frivolous. The sanctions motion is premised on a factual dispute regarding whether and when TRC acquired 1-2-1 Direct and whether Mitchell or Discount had any ownership interest in 1-2-1 Direct. In the present action, Mitchell claims an ownership interest in 1-2-1 Direct by virtue of his shareholder status in NAL, which was a large shareholder of ICCI. In the Pennsylvania action, Discount claims an ownership interest in 1-2-1 Direct by virtue of his equity in TRC.

The defendants contend that TRC acquired 1-2-1 Direct in May 2010 based on the SPA between ICCI and TRC dated May 12, 2010. The defendants base their sanctions motion on the assertion that Fox Rothschild knew this and falsely represented otherwise. Fox Rothschild argues that "the issue is when, if ever, the transaction closed." Response at 2 (DE# 138, 7/20/12). Fox Rothschild maintains that "[b]ased on the available documentary evidence, which is substantial, the transaction did not close in May 2010. It closed in January 2011, at the earliest, when ICCI and TRC purportedly settled their disputes concerning the sale. Even then, it may not have closed lawfully, if shareholder approval was not obtained as required." Id.

The defendants rely primarily on the Declaration of the plaintiff and Fox Rothschild's former client, Clifton M. Mitchell. Additionally, the defendants rely on pleadings filed by Fox Rothschild on behalf of another client, Stuart Discount, in the

11

Philadelphia litigation involving the call center but misstate the facts as to Discount's position. Fox Rothschild explains that Discount's position in the Philadelphia action[3] was that "**if** the May 2010 transaction really closed, Discount was entitled to a 50% interest in the business, based on an oral agreement between Discount and Fine." See Berman Declaration ¶ 35, n.3 (emphasis in original). Neither Discount nor Fox Rothschild on his behalf represented to the Philadelphia court that the transaction definitely closed." Response at 3 (footnote omitted).

In his declaration filed in support of the defendants' motion for sanctions, Mitchell accuses Fox Rothschild of having a conflict of interest in representing him and Discount in the cases involving the call center. Response at 3, n.3; Berman Declaration ¶¶ 24-25. Mitchell knew Fox Rothschild was representing Discount, understood the nature of Discount's claims, agreed to the joint representation and signed a conflict waiver. Berman Declaration ¶24-25. The defendants argue that Mitchell had no dispute with TRC and Fine, but that Fox Rothschild convinced him to sue them. According to Fox Rothschild, Mitchell came to Fox Rothschild with the express purpose of pursuing his claims against TRC and Fine for interfering with his opportunity to acquire 1-2-1 Direct. Berman Declaration ¶ 27. The claims asserted in the present case are not objectively frivolous. The factual dispute concerning ownership of 1-2-1 Direct cannot justify an

---

[3]Discount's answer in the Pennsylvania action states "upon information and belief, it is unclear whether the sale between the TRC Companies and INCC was ever consummated and that issue is being litigated in the Florida courts." Discount Answer at ¶ 23 (DE# 124-3, 5/23/12). In the Pennsylvania action, Discount alleges "[o]ver a weekend in May 2010, without his involvement, Fine and Uccello purportedly reached a deal and agreed that Discount would give up his shares in INCC and Fine would purchase Tele-Response Center and Telestar Marketing. It later turns out the deal was not, in fact, consummated." Second Amended Joinder Complaint against Jason Fine in Pennsylvania action at ¶¶ 45-46 (DE# 124-4, 5/23/12).

12

award of Rule 11 sanctions.

Sanctions Are Not Warranted under 28 U.S.C.A. § 1927 or the Court's Inherent Power

The purpose of 28 U.S.C.A. § 1927 is "to deter frivolous litigation and abusive practices by attorneys ... and to insure that those who create unnecessary costs also bear them." O'Rear v. American Family Life Assur. Co. of Columbus, Inc., 144 F.R.D. 410, 413 (M.D. Fla. 1992).

> The plain language of the statute imposes three essential requirements for an award of sanctions under Section 1927: First, the attorney must engage in unreasonable and vexatious conduct.  Second, that unreasonable and vexatious conduct must be conduct that multiplies the proceedings. Finally, the dollar amount of the sanction must bear a financial nexus to the excess proceedings.

Amlong v. Amlong, P.A., Inc., 500 F.3d 1230, 1239 (11th Cir. 2007).  "An attorney multiplies proceedings unreasonably and vexatiously within the meaning of the statute only when the attorney's conduct is so egregious that it is tantamount to bad faith."  Id.

The inherent power of the Court to sanction is similar to the authority to sanction pursuant to Section 1927.  Both require a finding of bad faith measured against objective standards of conduct.  Id. at 1241.  Negligent conduct without more will not support a finding of bad faith.  Id. at 1241-42.  The "attorney must knowingly or recklessly pursue a frivolous claim or needlessly obstruct the litigation of a non-frivolous claim."  Id. at 1242.  Recklessness is "a gross deviation from conduct that might be reasonable in the circumstances."  Schwartz v. Millon Air, Inc., 341 F.3d 1220, 1227 (11th Cir. 2003).

In Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991), the Supreme Court explained that "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." The third factor, which is the most relevant in the present case,

13

permits a court to assess attorney's fees when a party has "'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Id. at 45-46 (quoting Alyeska, 421 U.S. at 258-59 (quoting F.D. Rich Co. v. United States ex rel. Indus. Lumber Co., 417 U.S. 116 (1974) (other citations omitted)). "[T]he bad-faith exception resembles the third prong of Rule 11's certification requirement, which mandates that a signer of a paper filed with the court warrant that the paper 'is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.'" Id. at 46, n.10.

The defendants argue that Fox Rothschild committed a fraud on the court by maintaining polar opposite positions on the ownership of 1-2-1 in the Pennsylvania action and the present action for two different clients, Discount and Mitchell, respectively. The defendants contend that Fox Rothschild pursued Mitchell's federal action without factual or legal support to extort a settlement from the defendants. Reply at 1-2 (DE# 142, 7/30/12). The defendants maintain that TRC Acquisition acquired 1-2-1 Direct from ICCI in May 2010, when they entered the SPA. Re-Submitted Motion for Sanctions at 2-3 (DE# 124, 5/23/12). The defendants argue that "[i]t is now known that Fox Rothschild agrees that the sale took place in May 2010 and is estopped from arguing otherwise." Id. at 3 (citing *infra* at pages 10-11). The Court disagrees. In this action, Fox Rothschild maintains that the conditions of closing did not occur in May 2010 or anytime prior to January 2011 when the parties to the SPA expressly waived the closing conditions in their January 2011 settlement agreement.

*Res Judicata* Did Not Bar Mitchell's Claims

Consent judgments are not binding on non-parties. United States v. Jefferson County, 720 F.2d 1511, 1518 (11th Cir. 1983). "Although a stipulated dismissal qualifies

14

as a dismissal on the merits for res judicata purposes, Florida courts do not seem to recognize issue[s] resolved with a judgment entered into by consent or stipulation as being actually or fully litigated for collateral estoppel purposes." Lozman v. City of Riviera Beach, 713 F.3d 1066, 1079 (11th Cir. 2013) (citing JFK Med. Ctr. v. Price, 647 so. 2d 833, 834, n.1 (Fla. 1994)(other citations omitted)). "In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated." Restatement 2d, Judgments, § 27. "[A] settlement agreement is essentially a contract and is subject to the traditional rules of contract interpretation." Norfolk Southern Corp. v. Chevron, U.S.A., Inc., 371 F.3d 1285, 1290 (11th Cir. 2004)(citing Monahan v. Comm'r, 321 F.3d 1063, 1068 (11th Cir. 2003)). "[W]here the parties stipulate to having a case dismissed, a somewhat modified form of *res judicata* applies to the written settlement agreement upon which such dismissal is predicated, if one exists." Id. at 1291; see United States v. Armour & Co., 402 U.S. 673, 682 (1971) ("Because the defendant has, by the [consent] decree, waived his right to litigate the issues raised, a right guaranteed to him by the Due Process Clause, the conditions upon which he has given that waiver must be respected, and the instrument must be construed as it is written.")

     Although Mitchell was listed as a defendant, he was never served in the Florida state court case and there is no evidence that Mitchell evaded service in that action. Additionally, the state court action was voluntarily dismissed without prejudice. "The effect of a voluntary dismissal without prejudice is to render the proceedings a nullity and leave the parties as if the action had never been brought." In re Piper Aircraft Distrib. Sys. Antitrust Litigation, 551 F.2d 213, 219 (8th Cir. 1977). A dismissal "without prejudice" lacks the necessary element of *res judicata* because it is not a final

15

determination on the merits. see also Restatement 2d, Judgments, § 20(1)(b). Notably, in their Reply, the defendants argue that the TRO from Texas was immaterial among other things because "the Texas Court did not purport to bind TRC or Mr. Fine, over whom the Texas Court never claimed to have jurisdiction." Reply at 4 n.2 (DE# 142, 7/30/12).

Likewise, the Consent Judgment in the Florida state court action is not binding on Mitchell because he was not served and the Florida state court thus, lacked jurisdiction over him. The Consent Judgment in the Florida state court has no res judicata effect on Mitchell because he was not served in the action and he was not a party to the Settlement Agreement. See Norfolk Southern Corp. v. Chevron USA, Inc., 371 F.3d 1285, 1288 (11th Cir. 2004) (where parties consent to a dismissal based on a settlement agreement, the principles of res judicata apply in a somewhat modified form to the matters specified in the settlement agreement, rather than the original complaint). The Florida state court action does not bar Mitchell's claims. Fox Rothschild is not subject to sanctions for asserting Mitchell's claims in this action.

Economic Loss Rule

At the time the plaintiff filed this action, Florida law "held that a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract." See Indemnity Ins. Co. of North America v. American Aviation, Inc., 891 So. 2d 532, 537 (Fla. 2004) (citation omitted). "Intentional tort claims for fraud, conversion, ... and other torts requiring proof of intent generally remain viable" under the economic loss rule. Id. at 543, n. 3. The economic loss rule bars a tort claim to recover solely economic damages for those in contractual privity. In 2013, receding from American Aviation and other prior case law to the extent that they are inconsistent with this

16

holding, the Florida Supreme Court held that the economic loss rule is limited to products liability cases. See Tiara Condominium Ass'n, Inc. v. Marsh & McLennan Co.,110 So.3d 399, 407 (Fla. 2013). Mitchell was not a party to the SPA or any other agreement with TRC. Then and now, the economic loss rule did not bar Mitchell's tort claims and thus, sanctions are not warranted.

Derivative Claims

The defendants contend that Mitchell's conversion, conspiracy, accounting and receiver claims are derivative claims because they belong to ICCI, not Mitchell. Under Florida law, whether a shareholder's claim is derivative or direct is based on "the nature of the injuries alleged and the wrongs sought to be remedied." Alario v Miller, 354 So.2d 925, 926 (Fla. 2d DCA 1978). "[A] stockholder may bring a suit in his own right to redress an injury sustained directly by him, and which is separate and distinct from that sustained by other stockholders." Id. (internal citations omitted) "Thus the injury is the determining factor in deciding whether a claim is direct or derivative...." Fox v. Professional Wrecker Operators of Florida, 801 So. 2d 175, 179 (5th DCA 2001).

Mitchell's claims stem from his position that he had the contractual right, as of October 14, 2010, to pursue a transaction for the acquisition of 1-2-1 Direct, that TRC did not have the right to acquire 1-2-1 Direct at that time, and that TRC and its principal, Jason Fine, interfered with Mitchell's contract rights. Mitchell's claims arise from this central claim. Mitchell asserted the receiver claim to preserve the value of the business pending resolution of the litigation. The injuries alleged by Mitchell are injuries personal to him, not the corporation.

Mitchell's tortious interference claim included the allegation that the May 2010 SPA did not close. The defendants argue that the tortious interference claim was not

chronologically possible. Whether and when the May 2010 SPA closed is a disputed issue of fact that does not warrant imposition of sanctions against Fox Rothschild.

Mitchell's conversion claim is based on allegations that he entered into a binding contract to purchase 1-2-1 Direct from ICCI and that the defendants seized possession of 1-2-1 Direct without authorization. See Gemb Lending, Inc. v. RV Sales of Broward, Inc., 2010 WL 3385343 at *6 (S.D. Fla. Aug. 25, 2010) ("The elements of conversion in Florida are: '(1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein.'")(quoting Special Purpose v. Prime One, 125 F. Supp. 2d 1093, 1099-1100 (S.D. Fla. 2000)(citation omitted)); Advanced Surgical Technologies, Inc. v. Automated Instruments, Inc., 777 F.2d 1504, 1507 (11th Cir. 1985) (per curiam). Mitchell's conspiracy claim is based on the underlying torts of conversion and tortious interference. The defendants seeks sanctions based on their position that the May 2010 SPA closed and that they owned 1-2-1 Direct, which presents a disputed issue of fact.

The defendants argue that Mitchell's accounting claim is sanctionable because he did not have a fiduciary relationship with the defendants. "Under Florida law, a party seeking an equitable accounting must show the existence of a fiduciary relationship or a complex transaction and must demonstrate that the remedy at law is inadequate." Kee v. Nat'l Reserve Life Ins. Co., 918 F.2d 1538, 1540 (11th Cir. 1990) (citation omitted). Mitchell maintains that the transactions involved were "extremely complex and that an accounting was appropriately requested to bring to light relevant facts concerning the parties' contractual and financial transactions." Response at 19 (DE# 138, 7/20/12).

Mitchell's receiver claim asserts 1) the inadequacy of legal remedies; 2) a substantial likelihood of success on the merits; 3) the possibility of irreparable injury to

18

his right to acquire 1-2-1 Direct; and 4) that the possible injury to the defendants from the appointment of a receiver was outweighed by the potential damage to Mitchell resulting from mismanagement of the business.  See Amended Complaint, Count IX (DE# 36, 4/12/11); see also National Partnership Invest. Corp. v. Nat'l Housing Dev. Corp., 153 F.3d 1289, 1291 (11th Cir. 1998).

Fox obtained information from Mitchell and others that TRC and Fine had seized control of the call center without complying with material closing conditions and that Fine was mismanaging the business. Response at 19 (DE# 138, 7/20/12); Berman Decl. ¶ 27.  The parties settled before any discovery regarding mismanagement was taken.  Fox Rothschild did not pursue appointment of a receiver after the parties' settlement fell through.  Instead, Fox Rothschild withdrew as counsel.  Defendants' contention that the call center was well managed by Fine presents a disputed issue of fact. As such, sanctions are not warranted.

## **CONCLUSION**

The undersigned finds that Mitchell's claims are not objectively frivolous and that Fox Rothschild's conduct did not constitute a fraud on this Court or bad faith. Additionally, neither res judicata nor the economic loss rule bars Mitchell's claims. Accordingly, sanctions are not warranted against Fox Rothschild under Rule 11 or 28 U.S.C.A. § 1927 or the inherent power of this Court.

DONE AND ORDERED, in Chambers, in Miami, Florida, this **10th** day of December, 2014.

JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
All counsel of record